IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH BOLANOS<br>34 West 76th Street, Apt. 10<br>New York, New York 10023<br><br>       Plaintiff,<br><br>  v.<br><br>THE CITY OF NEW YORK<br><br>SEAN J. QUEALY, NYPD DETECTIVE<br>26 Federal Plaza<br>New York, NY 10278<br><br>NATHAN RUDNICK, FBI SPECIAL AGENT<br>26 Federal Plaza<br>New York, NY 10278<br><br>JOHN AND JANE DOES 1-10<br>Members of New York Joint Terrorism Task Force<br>26 Federal Plaza<br>New York, NY 10278<br><br>       Defendants. | CIVIL ACTION NO.<br>1:24-cv-01011<br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS**

**INTRODUCTION**

  1.  This lawsuit, brought under the Civil Rights Act, 42 U.S.C. 1983, against the City of New York, certain New York City Police Department (NYPD) officers, and under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), against certain Federal Bureau of Investigation (FBI) agents, acting individually and jointly as a Joint Terrorism Task Force (JTTF), seeks compensatory damages, punitive damages, and attorney's fees for the violations of the civil rights

1

of plaintiff Joseph Bolanos as secured under the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution, for the unlawful and unreasonable searches of his apartment, which was broken into with a battering ram and ransacked, the apartment of his ailing 93-year old mother where Bolanos was staying at the time while she was in a rehabilitation center, which was also ransacked and trashed, in simultaneous pre-dawn raids around 6:00 a.m. on February 11, 2021; the seizures of his property, including several phones, computers, and other equipment; and the search and seizure of plaintiff Bolanos himself. Bolanos had an automatic rifle pointed at his head by one of the defendants, was handcuffed, and detained for some four to five hours in one of the defendant's vehicles in front of the apartment before he was rushed to the hospital by ambulance for emergency medical treatment around 11:15 a.m. These raids, searches, and seizures, were ostensibly conducted as part of the nationwide investigation and arrest of persons who broke into and occupied the U.S. Capitol on January 6, 2021, even though the defendants well knew after previously interviewing Bolanos on February 4, 2021, that he did not enter the Capitol or violate any laws connected with the protests of January 6, 2021, and indeed was assisting the defendants in their investigation.

2. As a direct and proximate result of these unlawful, unreasonable, and outrageous raids and conduct, and of Bolanos being held in custody by the defendants in their vehicle for some five hours, Bolanos, aged 69, experienced physical stress, pain, and discomfort while the raid on his mother's apartment continued. The defendants ignored his complaints of his physical pain for several hours until his medical condition reached a critical stage. The agents told Bolanos that they could not call an ambulance but that he could, but he was not in any condition to do so. The agents finally called an ambulance, which rushed him to Mount Sinai Hospital, where he was examined with a dangerously high blood pressure of **220/143** and had suffered a stroke, leaving

him partially disabled. He remained hospitalized until February 18, 2021 and transferred to acute rehabilitation. He was discharged February 25, 2021, with ten different medications, and subsequently suffered four more strokes.  He also suffered and continues to suffer great humiliation, reputational damage, trauma, and distress for being targeted by the Defendants' terrorist task force, which, in fact, had terrorized him.  In addition, Defendants damaged his and his mother's personal property.  One of his cameras that was taken was never returned. He was never charged with any offense.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1983 and 28 U.S.C. 1331 and the amount in controversy exceeds $75,000.

4. Jurisdiction is also proper under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), insofar as the actions violate the First, Fourth, and Fift Amendments to the U.S. Constitution.

5. Venue is proper in the Southern District of New York pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b) since a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and Defendants are subject to personal jurisdiction in this District.

## PARTIES

6. Plaintiff Joseph Bolanos ("Bolanos") is an individual, natural person, a citizen of the United States, who at all material times was and is a resident of New York State and New York City in this district, a law-abiding citizen, and until these unlawful searches and seizures, was a well-respected civic leader and member of his Upper West Side community.

7. Defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8. Defendant Sean J. Quealy was and is a Detective of the NYPD and a member of the JTTF.

9. Defendant Nathan Rudnick was and is an FBI Special Agent and a member of the JTTF.

10. Defendants John and Jane Does 1-10 were and are either NYPD officers or FBI agents assigned to or supervised by the JTTF whose identity will be obtained during discovery. The individual defendants acted under the color of law and are sued in their individual, supervisory, and official capacities, for violating Bolanos's civil and constitutional rights.

**FACTS**

11. Bolanos was a pillar of his community until the defendants' unlawful raids of his and his mother's apartments on February 11, 2021. As president of his Upper West Side block association for the past 23 years, he looked out for his neighbors during the pandemic. He dropped off masks and kept extra heaters in his rent-controlled apartment for seniors. A Red Cross volunteer after the 9/11 attacks, he once received a police commendation for heroism after saving a woman from being mugged. He single-handedly collected over $5,000 in food, diapers, and supplies for the victims of 1998 Kosovo crisis. Unmarried, and caring for his 93-year-old mother, who lived in Washington Heights, he was a well-loved character in the quiet residential area.

12. A registered Democrat, Bolanos traveled to Washington, D.C., on the morning of January 6, 2021, via Amtrak to meet an old friend and to witness the electoral count proceedings.

13. He attended the rally on the Mall by the Washington Monument, but due to the cold weather, left around 12:45 pm before President Trump's speech ended. He went to the J.W. Marriott hotel where his friend was staying and remained there for about an hour to warm up.

14. Bolanos took some photographs inside the hotel, time-stamped from 1:41 pm to 2:04 pm. Unbeknownst to Bolanos, the Capitol had been breached at 12:57 pm.

15. Bolanos and his friend decided to head to the Capitol to learn what had happened with the Electoral College vote count.

16. Bolanos videotaped the scene as they walked slowly down Pennsylvania Avenue.

17. They arrived at the rear of the Capitol at about 2:45 p.m. He and his friend stood on a patch of muddy lawn about 400 feet from the wall of the Capitol, taking photos. There were no signs or barriers banning people from being on those grounds, nor did it appear from his vantage point that any riot was occurring.

18. An alert came on his cellphone at 3pm from the Mayor of the District of Columbia imposing a curfew of 6pm, that National Guard were being deployed, and so Bolanos and his friend left the area and returned to his hotel. Bolanos never entered the Capitol Building nor confronted any police officer or destroyed any government property.

19. The next day, January 7, 2021, Bolanos returned to his home in New York via Amtrak.

20. An FBI agent phoned Bolanos the next day on January 8, 2021 and left a voice message. Bolanos returned the call on January 12, 2021 and left a message but never heard back from the FBI.

21. On January 28 and 29, 2021, the defendant's agents rang the doorbell of Bolanos's apartment while he wasn't home but did not leave any messages or papers nor call him to follow up.

22. On February 4, 2021, at approximately 6:00 PM, four defendants, including defendant NYPD Detective Sean Quealy on information and belief, came to his mother's apartment located at 615 Fort Washington, Ave., Apt. 5G, New York, NY, in Washington Heights, where Bolanos was staying while his mother was in a rehabilitation center. He had been living there on and off to help his mother. Mr. Bolanos was getting his mother's apartment handicap-ready in anticipation of her release from rehab.

23. Bolanos let the officers and agents of the JTTF inside the apartment and voluntarily submitted to an interview that lasted approximately 35 minutes.

24. During the February 4 interview, he was asked if he was a member of the Proud Boys, BLM, or Antifa, which he was not, and he described his movements in Washington, D.C. on January 6

25. He gave the JTTF agents a USB thumb drive that he downloaded then and there from his laptop containing videos he had taken on January 6 in Washington, D.C. JTTF asked for the originals, but he told them that they were at his apartment on West 76th Street and offered to get them over the weekend. The JTTF agents said they would return the morning of February 8.

26. When the JTTF failed to return on February 8, Bolanos figured they had what they needed and would not come back. In the meantime, Bolanos visited his mother in the rehab center to wish her a happy birthday.

27. Instead of following up for a return visit, one or more of the JTFF defendants, acting in bad faith and without probable cause subsequently procured a search and seizure warrant for both premises and for plaintiff Bolanos, on February 10, 2021 at 6:06 pm, via a telephone call to United States Magistrate Judge Gabriel W. Gorenstein.  The WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS falsely stated that Bolanos was a Target Subject who "committed" seven federal crimes for merely exercising his First Amendment right to attend a rally in Washington, D.C. See EXHIBIT 1 attached hereto.

28. While the warrant refers to both "Attachment A and Attachment B", only Attachment B was provided describing the evidence to be seized.  Attachment A presumably was the Affidavit provided by one of the defendants to the Magistrate that purportedly provided probable cause for its issuance, when in fact, no probable cause existed, as the defendants well knew. Bolanos was not charged with any crime.

29.  While the warrant provided that it could be executed on or before February 24, 2021, which was two weeks from its issuance, the JTTF agents were in a rush and executed it approximately 12 hours later on the next morning on February 11, 2021, at approximately 6:00 a.m. when Bolanos was awakened by a loud banging on his mother's apartment door with shouts of "FBI let us in" or words to that effect.

30. Approximately 8-10 agents of the JTTF came rushing in wearing military SWAT-style tactical gear, with a crowbar and battering ram, and with one agent pointing an automatic rifle at Bolanos's head. Two JTTF agents were in civilian clothing.

31. Bolanos was immediately handcuffed and taken outside and placed in one of the vehicles of the defendants with two agents where he was interrogated, while the search of his mother's apartment continued for some four hours.

32. Bolanos was deprived of his liberty for the duration of this time.  At no point was he allowed to take his medication.  A no point was Bolanos free to terminate the encounter.

33. Bolanos was not given a copy of the search warrant nor does the warrant state the time it was executed on February 11, 2021 as required by Rule 41 of the Federal Rules of Criminal Procedure.

34. A local TV cameraman, presumably NBC, was filming the JTTF agents bringing out boxes containing items seized from his mother's apartment, and a story appeared later than day on television by NBC reporter Jonathan Deintz, suggesting that Bolanos was being arrested for violating criminal laws for his conduct at the U.S. Capitol on January 6.

35. On information and belief, a member of the JTTF tipped off the reporter of the raid to maliciously further damage Bolanos's reputation and standing in the community.[1]

36. While Bolanos was in the agent's car, he continued to be interrogated but started to experience physical discomfort and pain.

37. His complaints of his physical pain were callously ignored by defendants for several hours until his medical condition reached a critical stage.

---

[1] Devine, Miranda, *FBI tears innocent New Yorker's life into shreds after Jan. 6* (June 23, 2021) https://nypost.com/2021/06/23/fbi-tears-new-yorkers-life-into-shreds-devine/

38. One agent was called from the apartment to the vehicle to check on Bolanos and simply took his oxygen saturation level with a pulse oximeter and told the agents in the car it was in the 90s and that he was fine, which was not the case.

39. The agents told Bolanos that they could not call an ambulance but that Bolanos could do so if he wanted to. Bolanos, however, was in no condition to do so. The agents finally called an ambulance, which rushed Bolanos to Mount Sinai Hospital, where he was examined and arrived with a dangerously high blood pressure of **218/144** and had suffered a stroke, leaving him partially disabled. He remained hospitalized until February 18, 2021 and transferred to acute rehabilitation.

40. He was discharged February 25, 2021, with ten different medications, and subsequently suffered four more strokes. He also suffered and continues to suffer great humiliation, reputational damage, trauma and distress for being a targeted by Defendants' terrorist task force, which in fact had terrorized him.

41. Because of defendants' actions, Bolanos suffered and continues to suffer physical pain and suffering, including another stroke in May 2021 and three more in early 2023, as well as great humiliation, reputational damage, trauma, and mental distress for being a target of defendants' terrorist task force.

## FIRST CAUSE OF ACTION
*Violation of First Amendment and Due Process Rights*

42. Plaintiff repeats and re-alleges all of the previous allegations of the entirety of this Complaint with the same force and effect as if fully set forth herein again at length.

43. 42 U.S.C. § 1983 provides in pertinent part that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the

jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . . .

44. At the time of the events complained herein, Plaintiff possessed the clearly established constitutional right to exercise his First Amendment rights of freedom of assembly and freedom of speech and not to be retaliated against for exercising those rights.

45. The Defendants were at all times relevant to this Complaint acting under color of state law, on duty within the terms of their employment and assignment, and not on a lark or detour from their employment and assigned duties, but abusing their positions and offices in violation of the Plaintiff's rights.

46. The Defendants formed a retaliatory motive against Plaintiff for exercising his First Amendment rights on January 6, 2021. On February 11, 2021, without probable cause and with malicious intent, raided and searched his and his mother's apartment, took his personal property, including phones, computers, and other equipment identified in Exhibit 1 inventory, handcuffed him, detained him for some five hours, denying him medical care, and intentionally or recklessly causing him to suffer a stroke and suffer great trauma, severe emotional distress, shock, fright, loss of freedom, humiliation and damage to his reputation because he had exercised his First Amendment rights by attending a rally at the U.S. Capitol on January 6, 2021.

47. The Defendants, acting in concert, jointly and severally, possessed a retaliatory motive.

48. The violations of Plaintiff's liberty interest and freedom from bodily injury by the Defendants are also compensable under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

WHEREFORE, Plaintiff prays for relief and judgment against each of the Defendants,

jointly and severally, as follows: general damages, special damages, punitive damages, pre-judgment and post-judgment interest as allowed by law, costs of suit incurred herein, and any other further relief the Court deems just and proper, for the illegal, unconstitutional and intentional and malicious acts of the Defendants, each and every one of them.

## SECOND CAUSE OF ACTION
*Civil Action for Deprivation of Rights under the Fourth Amendment*
*Against All Defendants*
**42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)**

49. Plaintiff repeats and re-alleges all of the previous allegations of the entirety of this Complaint with the same force and affect, as if fully set forth herein again at length.

50. At the time of the events complained herein, Plaintiff possessed the clearly established constitutional right to be free from unreasonable searches and seizures under the Fourth Amendment, physical abuse, terrorizing, intimidation, false arrest, violation of the right to be safe and secure in his person, houses, papers and effects, and the like.

51. The Defendants were at all times relevant to this Complaint acting under color of state law, on duty within the terms of their employment and assignment, and not on a lark or detour from their employment and assigned duties, but abusing their positions and offices in violation of the Plaintiff's rights.

52. All Defendants acted in concert to unlawfully institute, conduct, unlawful searches and seizures, unlawfully handcuffing and detaining Plaintiff for some five hours, and physical and emotional harm to the Plaintiff as pled in detail herein.

53. 42 U.S.C. § 1983 provides in pertinent part that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities

11

secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

54. The Defendants did so with shocking and willful indifference to Plaintiff's rights and, in doing so, exhibited conscious awareness that they would cause Plaintiff severe physical and emotional injuries.

55. The Defendants acted in bad faith in procuring the two search warrants and lacked sufficient probable cause to have them issued.

56. The acts or omissions of all Defendants were moving forces behind Plaintiff injuries.

57. These Defendants acted in concert and jointly in a conspiracy with each other.

58. The acts of omissions of the Defendants as described herein intentionally deprived Plaintiff of his constitutional rights and caused him other damages.

59. These Defendants are not entitled to any immunity for the conduct complained herein.

60. The Defendants to this claim at all times relevant hereto were acting as part of a conspiracy, in concert, jointly and severally, pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Plaintiff.

61. As a proximate result of the Defendants' unlawful conduct, Plaintiff has suffered actual and physical and emotional injuries, and other damages and losses entitling him to compensatory and special damages, in amounts to be determined at trial.

WHEREFORE, Plaintiff prays for relief and judgment against each of the Defendants, jointly and severally, as follows: general damages, special damages, punitive damages, pre-judgment and post-judgment interest as allowed by law, costs of suit incurred herein, attorney's fees, and any other further relief the Court deems just and proper, for the illegal, unconstitutional and intentional and malicious acts of the Defendants, each and every one of them.

## THIRD CAUSE OF ACTION
*Civil Action for Deprivation of Due Process*
*Against All Defendants*
**42 U.S.C. § 1983 –Violation of the Fifth and Fourteenth Amendments**

62. Plaintiff repeats and re-alleges all of the previous allegations of the entirety of this Complaint with the same force and effect, as if fully set forth herein again at length.

63. At the time of the events complained herein, Plaintiff possessed the clearly established constitutional right not to be deprived of life, liberty, or property with due process of law, and to be free from physical abuse, detention, terrorizing, intimidation, and fright from assault.

64. The Defendants were at all times relevant to this Complaint acting under color of state law, on duty within the terms of their employment and assignment, and not on a lark or detour from their employment and assigned duties, but abusing their positions and offices in violation of the Plaintiff's rights.

65. As a proximate result of the Defendants' unlawful conduct, Plaintiff has suffered actual and physical and emotional injuries, and other damages and losses to his personal property which was confiscated without due process by entitling him to compensatory and special damages, in amounts to be determined at trial.

WHEREFORE, Plaintiff prays for relief and judgment against each of the Defendants, jointly and severally, as follows: general damages, special damages, punitive damages, pre-judgment and post-judgment interest as allowed by law, costs of suit incurred herein, attorney's fees, and any other further relief the Court deems just and proper, for the illegal, unconstitutional and intentional and malicious acts of the Defendants, each and every one of them.

### FOURTH CAUSE OF ACTION
*Civil Action for Deprivation of Rights*
*Against All Defendants*
**42 U.S.C. § 1983 –Violation of the Fifth Amendment**

66. Plaintiff repeats and re-alleges all of the previous allegations of the entirety of this Complaint with the same force and effect, as if fully set forth herein again at length.

67. At the time of the events complained herein, Plaintiff possessed the clearly established constitutional right to be free from physical violence, physical abuse, terrorizing, intimidation, fright from assault, and false imprisonment or kidnapping violating the right of liberty and travel, excessive force, and the like.

68. At the time of the events complained herein, Plaintiff possessed the clearly established constitutional right to be free from physical violence, physical abuse, terrorizing, intimidation, fright from assault, and false imprisonment or kidnapping violating the right of liberty and travel, excessive force, and the like.

69. The Defendants were at all times relevant to this Complaint acting under color of state law, on duty within the terms of their employment and assignment, and not on a lark or detour from their employment and assigned duties, but abusing their positions and offices in violation of the Plaintiff's rights.

70. Any reasonable person knew or should have known of these rights at the time of the complained of conduct insofar as they were clearly established at that time; especially to the Defendants as sworn law enforcement officers.

71. All Defendants acted in concert to unlawfully institute, conduct and continue physical battery and physical abuse of the Plaintiff as pled in detail herein.

72. The Defendants engaged in the conduct described by this Complaint willfully, deliberately, maliciously, in bad faith, and in reckless disregard of Plaintiff's federally

protected constitutional rights.

73. The acts or omissions of all the Defendants were moving forces behind Plaintiff's injuries.

74. All Defendants acted in concert as part of the conspiracy to deprive Plaintiff of his civil rights.

75. The acts or omissions of the Defendants, as described herein, intentionally deprived Plaintiff of his constitutional and statutory rights and caused other damages.

76. The Defendants are not entitled to any immunity for the conduct complained herein.

77. The Defendants to this claim were, at all times relevant hereto, acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Plaintiff.

78. As a proximate result of the Defendants' unlawful conduct, Plaintiff has suffered actual and physical and emotional injuries, and other damages and losses entitling him to compensatory and special damages, in amounts to be determined at trial.

WHEREFORE, Plaintiff prays for relief and judgment against each of the Defendants, jointly and severally, as follows: general damages, special damages, punitive damages, pre-judgment and post-judgment interest as allowed by law, costs of suit incurred herein, and any other further relief the Court deems just and proper, for the illegal, unconstitutional and intentional and malicious acts of the Defendants, each and every one of them.

## FIFTH CAUSE OF ACTION
*Civil Action for Deprivation of Rights*
*Against The City of New York and All NYPD Defendants*

**42 U.S.C. § 1983 – Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision in Violation of the Fourteenth, and First Amendments**

79. Plaintiff repeats and re-alleges all of the previous allegations of the entirety of this Complaint with the same force and effect as if fully set forth herein again at length.

80. Plaintiff possessed the following clearly established rights, guaranteed to them by the Constitution of the United States, at the time of the conduct complained herein:

81. The right to bodily integrity and to be free from unlawful seizure by law enforcement under the Fourth Amendment, Fifth Amendment, Fourteenth Amendment and Due Process requirements of the U.S. Constitution.

82. The Defendants knew or should have known of these rights at the time of the complained conduct insofar as they were clearly established at that time, especially to Defendants as sworn law enforcement officers.

83. The acts or omissions of these Defendants, as described herein, deprived Plaintiff of his constitutional and statutory rights and caused him other damages.

84. The Defendants are not entitled to any immunity for the conduct complained herein.

85. The Defendants developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate and willful indifference to the constitutional rights of citizens, which were moving forces behind and proximately caused the violations of Plaintiff constitutional and federal rights as set forth herein, and in the other claims, which resulted from a conscious and deliberate choice to follow a course of action from among various alternative courses of conduct available.

86. The Defendants, each and every one of them, acting in concert, jointly and severally, created and have unlawfully tolerated an atmosphere of lawlessness, and have developed and maintained long-standing, department-wide customs, law enforcement-related policies, procedures, customs, and practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff and of the public generally.

87. All Defendants acted in concert as part of the conspiracy to deprive Plaintiff of his civil and constitutional rights.

WHEREFORE, Plaintiff prays for relief and judgment against each of the Defendants, jointly and severally, as follows: general damages, special damages, punitive damages, pre-judgment and post-judgment interest as allowed by law, costs of suit incurred herein, and any other further relief the Court deems just and proper, for the illegal, unconstitutional and intentional and malicious acts of the Defendants, each and every one of them.

## I. PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray for relief and judgment against each of the Defendants, jointly and severally, as follows: general damages, special damages, punitive damages, pre-judgment and post-judgment interest as allowed by law, costs of suit incurred herein, and attorney's fees, in an aggregate amount of $5,000,000.00 as may be proven at trial, and any other further relief the Court deems just and proper, for the illegal, unconstitutional and intentional and malicious acts of the Defendants, each and every one of them, against the Plaintiff.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all counts as to all issues so triable.

Dated:  February 11, 2024

                                                                                 Respectfully Submitted,

                                                                             /s/ **Joseph D. McBride, Esq.**
                                                                            THE MCBRIDE LAW FIRM, PLLC
                                                                            Attorneys for the Defendant
                                                                            99 Park Avenue, 8th Floor
                                                                            New York, NY 10016
                                                                            *Phone:* (917) 757-9537
                                                                            *Email:*  jmcbride@mcbridelawnyc.com


                                                                            *Of Counsel:*
                                                                            Paul D. Kamenar
                                                                            1629 K Street, N.W.
                                                                            Suite 300
                                                                            Washington, D.C. 20006
                                                                            *Phone:* (301) 257-9435
                                                                            *Email:* paul.kamenar@gmail.com