UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

JOSEPH BOLANOS,

        Plaintiff,

     -v-                              No.  24-CV-01011-LTS

CITY OF NEW YORK,
SEAN J. QUEALY,
NATHAN RUDNICK, and
JOHN AND JANE DOES 1-10

        Defendants.

-------------------------------------------------------x

<u>MEMORANDUM ORDER</u>

        Joseph Bolanos ("Plaintiff") brings this action against the City of New York (the "City"); New York Police Department ("NYPD") Detective and member of the Joint Terrorism Task Force ("JTTF") Sean J. Quealy; Federal Bureau of Investigation ("FBI") Special Agent Nathan Rudnick; and John and Jane Does 1-10 (described as members of the JTTF), asserting claims for violations of his First, Fourth, Fifth, and Fourteenth Amendment rights under the Constitution of the United States through the Civil Rights Act, 42 U.S.C. § 1983, and <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).  This Court has jurisdiction of this action under 28 U.S.C. section 1331.

        Quealy and Rudnick, to whom the Court will refer collectively as the "Federal Defendants," have moved to dismiss Plaintiff's Complaint (docket entry no. 1 ("Complaint")) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Docket entry no. 30 ("Federal MTD").)  The City has moved separately to dismiss the Complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket entry no. 38.)  The Court has considered

the parties' submissions carefully and, for the following reasons, grants both motions, dismissing the Complaint in its entirety.

## I.   BACKGROUND

The following summary is drawn from the Complaint, all well-pleaded allegations of which are presumed to be true for the purposes of this motion practice.

Plaintiff is a resident of New York City.  (Complaint ¶ 6.)  On January 6, 2021, Plaintiff traveled to Washington, D.C. to view the electoral count proceedings.  (Id. ¶ 12.) Plaintiff took pictures and videos of his time in Washington, D.C., and near the Capitol, but was unaware of any riot occurring and "never entered the Capitol building nor confronted any police officer or destroyed any government property."  (Id. ¶¶ 13, 16-18.)  Plaintiff returned home via Amtrak the next day.  (Id. ¶ 19.)

Throughout the month of January, FBI agents attempted to get in contact with Plaintiff, once by calling Plaintiff and once by visiting Plaintiff's apartment when he was not home.  (Id. ¶¶ 20-21.)  On February 4, 2021, Defendant Quealy and three unidentified JTTF agents went to Plaintiff's mother's apartment, where Plaintiff was staying.  (Id. ¶ 22.)  Plaintiff let the agents in and agreed to allow Quealy to interview him for half an hour.  (Id. ¶ 23.) Plaintiff also gave Quealy a thumb drive with the videos he had taken on January 6th, and the agents said they would return to the apartment on February 8, 2021, to retrieve the originals of the videos.  (Id. ¶ 25.)  The agents did not return on February 8.  (Id. ¶ 26.)

On February 10, 2021, Magistrate Judge Gabriel W. Gorenstein authorized a search and seizure warrant after a phone call with unidentified members of the JTTF; the warrant authorized the search of Plaintiff's apartment, his mother's apartment, and the Plaintiff himself. (Id. ¶ 27.)  The search warrant was executed the next morning, on February 11, 2021, at 6:00

a.m., when Plaintiff woke up to "loud banging on his mother's apartment door with shouts of 'FBI let us in' or words to that effect." (Id. ¶ 29.) At that point, "approximately 8-10 agents of the JTTF came rushing in wearing military SWAT-style tactical gear . . . with one agent pointing an automatic rifle at [Plaintiff's] head." (Id. ¶ 30).

Plaintiff was handcuffed and placed in an agent's vehicle outside the apartment while the premises were searched for "some four hours"; he was also interrogated by two unnamed JTTF agents while in the vehicle. (Id. ¶ 31.) Plaintiff complained of physical pain to the agents; he alleges that his complaints were "callously ignored . . . for several hours until his medical condition reached a critical stage." (Id. ¶ 37.) At one point, an agent took his oxygen saturation level and declared Plaintiff was fine. (Id. ¶ 38.) Agents told Plaintiff that they "could not call and ambulance but that [he] could do so if he wanted to," but Plaintiff alleges he was "in no condition to do so." (Id. ¶ 39.) Agents eventually called an ambulance for Plaintiff, and he was taken to the hospital, where he arrived with dangerously high blood pressure and had suffered a stroke that left him partially disabled. (Id.) Plaintiff was hospitalized and was then in acute rehabilitation for approximately two weeks, and after his discharge he suffered four more strokes. (Id. ¶¶ 39-40.)

Plaintiff filed this Complaint on February 11, 2024. (See Complaint.) The Federal Defendants filed their motion to dismiss the Complaint on September 27, 2024. (See Federal MTD.) The City answered Plaintiff's Complaint on July 1, 2024 (see docket entry no. 19), and then filed a motion for judgment on the pleadings on October 25, 2024 (see docket entry no. 38).

On November 18, 2024, Plaintiff's counsel requested an extension of time to reply to the pending motions and indicated an intention to withdraw as counsel of record.

(Docket entry no. 41.)  Judge Vernon S. Broderick granted the extension, giving Plaintiff until December 2, 2024, to file an opposition and instructing Plaintiff's counsel to file a formal motion to withdraw pursuant to the federal and local rules.  (Docket entry no. 42.)  When Plaintiff still failed to oppose the pending motions, on December 3, 2024, Judge Broderick issued an order granting Plaintiff one final extension of time to oppose by December 9, 2024, and reminding Plaintiff's counsel of the requirements under the local rules to apply to withdraw as counsel. (Docket entry no. 43.)  Judge Broderick also ordered that, if Plaintiff failed to file an opposition by the deadline, the court would consider the motions unopposed and fully briefed.  Plaintiff's counsel failed to respond, file an opposition, or move to withdraw.  (Id.)  On December 4, 2024, this case was transferred to the undersigned.  On December 16, 2024, the undersigned granted Defendants' motion to stay discovery deadlines and ordered that, pursuant to Judge Broderick's December 3, 2024 Order, all pending motions would be considered fully briefed.  (Docket entry no. 45.)  No further filings or contacts with the Court have been made on Plaintiff's behalf.

## II.    DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The complaint must "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The Court must "draw all reasonable inferences in [plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  Faber v. Metro. Life Ins. Co., 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  "The standard for

addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006) (citation omitted).

A.    Defendants Rudnick and Quealy

Plaintiff has brought First, Fourth, Fifth, and Fourteenth Amendment claims against both Rudnick and Quealy pursuant to 42 U.S.C. § 1983 and Bivens. For the following reasons, these claims fail and are dismissed.

1.    Section 1983 Claims

Section 1983 provides, in pertinent part, that "every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights . . . shall be liable to the party injured." 42 U.S.C. § 1983 (Westlaw through P.L. 119-5) ("Section 1983"). It is well established, however, that a "prerequisite for relief under § 1983 . . . is that the defendant acted under color of state law." Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n.4 (2d Cir. 1991) (emphasis added). Therefore, it is well-settled that "an action brought pursuant to 42 U.S.C. § 1983 cannot lie against federal officers." Id.

The Complaint alleges that Defendant Rudnick was an FBI Special Agent during the underlying events; it contains no allegations that Rudnick was or could have been acting under color of state law. (See Complaint ¶ 9.) Because Rudnick was acting as a federal officer, all Section 1983 claims against him must be dismissed for failure to state a claim upon which relief could be granted.

Defendant Quealy argues that Plaintiff's Section 1983 claims cannot lie against him because Quealy was acting as a deputized federal agent at the time of the underlying events.

To support this argument, the Federal Defendants proffered a document, Form USM-3B Special Deputation Oath of Office, Authorization, and Appointment, which shows that Quealy was employed as an NYPD Officer and was deputized to be a federal Task Force Officer ("TFO") for the JTTF, from October 6, 2020, to October 31, 2022.  (See docket entry no. 32-1 (the "Deputation Form").)

While, ordinarily, courts are precluded from considering extrinsic documents on a motion to dismiss, courts may take judicial notice at any stage of a proceeding.  Richardson v. N.Y.C. Board of Ed., 711 F. App'x 11, 13 (2d Cir. 2017) (citing Fed. R. Evid. 201(d)).  "Courts may judicially notice facts that are 'not subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'"  Id.  "Official government reports and other types of government records are appropriate for judicial notice."  Paskar v. City of N.Y., 3 F. Supp. 3d 129, 134 (S.D.N.Y. 2014).

The Court finds that the Deputation Form is a government record that comes from a source whose accuracy cannot reasonably be questioned.  Therefore, it is appropriate for the Court to take judicial notice of the Deputation Form for the facts it asserts.  Further, the form does not contradict any allegations within the Complaint, as the Complaint itself alleges that Quealy was both a NYPD Detective and a member of the JTTF, a federal task force.  (See Complaint ¶ 8.)  Nor has Plaintiff asserted any opposition to consideration of the document at this stage of the proceeding.  For these reasons, the Court takes judicial notice of the Deputation Form.

The Deputation Form establishes that Quealy was a federally deputized TFO at the time the events alleged in the complaint took place.  Therefore, to the extent Quealy allegedly participated in the violation of Plaintiff's civil rights, he did so while acting under the color of

federal, not state, law.  Thus, any Section 1983 claims asserted against Quealy must be dismissed.

      2.      <u>Bivens Claims</u>

Plaintiff also asserts, in the alternative, <u>Bivens</u> claims against the Federal Defendants, arising under the First, Fourth, Fifth, and Fourteenth Amendments.  The Court must consider whether a <u>Bivens</u> cause of action is available before determining whether Plaintiff has stated a viable <u>Bivens</u> claim by alleging a violation of a "clearly established constitutional right." <u>Cohen v. United States</u>, 640 F. Supp. 3d 324, 334 (S.D.N.Y. 2022) (citing <u>Wood v. Moss</u>, 572 U.S. 744, 757 (2014)).

In <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, the Supreme Court recognized an implied private cause of action for damages under the Constitution for Fourth Amendment violations caused during a warrantless search by Federal Bureau of Narcotics agents.  403 U.S. 388 (1971).  Since then, the implied constitutional <u>Bivens</u> remedy has been expanded by the Supreme Court only twice: once recognizing an implied constitutional remedy under the Fifth Amendment for a sex-discrimination claim, <u>Davis v. Passman</u>, 442 U.S. 228 (1979), and once recognizing an implied remedy for an Eighth Amendment claim made by a federal prisoner, <u>Carlson v. Green</u>, 446 U.S. 14 (1980).

The Supreme Court is hesitant to find additional implied causes of action in the Constitution and cautions that "expanding the <u>Bivens</u> remedy is now a 'disfavored' judicial activity." <u>Ziglar v. Abbasi</u>, 582 U.S. 120, 135 (2017).  The Court in <u>Abbasi</u> created a two-step inquiry that courts apply in determining when to decline to extend <u>Bivens</u>: (1) does the case present a new context different from that of the original three <u>Bivens</u> cases (including whether the request "involves a new category of defendants") and, if so, (2) are there "special factors"

that "counsel hesitation" to extend <u>Bivens</u> "in the absence of affirmative action by Congress"? <u>Cohen</u>, 640 F. Supp. at 336 (citations omitted).  A "new context" is "understood to mean any context that 'is different in a meaningful way from previous <u>Bivens</u> cases decided by this Court.'"  <u>Id.</u> (quoting <u>Hernandez v. Mesa</u>, 589 U.S. 93, 102 (2020).)

This two-step process generally comes down to a single question: "whether there is any reason to think that Congress might be better equipped to create a damages remedy." <u>Egbert v. Boule</u>, 596 U.S. 482, 492 (2022).  <u>Egbert</u> effectively made clear that the two-step inquiry "operates as a bar to a <u>Bivens</u> claim in all cases except, perhaps, those involving Fourth, Fifth, and Eighth Amendment claims factually indistinguishable from <u>Bivens</u>, <u>Passman</u>, or <u>Carlson</u>."  <u>Cohen</u>, 640 F. Supp. 3d at 337.  The existence of an alternative remedial structure, even if that alternative is not as effective, is a "special factor" which "counsels hesitation" about extending a <u>Bivens</u> remedy.  <u>Id.</u> at 338.

The Fourteenth Amendment imposes due process requirements on the states, not the federal government.  Plaintiff's Fourteenth Amendment <u>Bivens</u> claims are therefore dismissed.  To bring a claim for violations of his due process rights by federal officials, Plaintiff can invoke the Fifth Amendment.  <u>See, e.g.</u>, <u>Tyson v. Fed. Bureau of Investigation</u>, No. 22-CV-3555-LTS, 2022 WL 1557000, at *2 (S.D.N.Y. May 16, 2022) ("Any due process claim against federal agents, if such a <u>Bivens</u> claims would lie, would arise under the Fifth Amendment, not the Fourteenth Amendment.").

Plaintiff's First Amendment retaliation <u>Bivens</u> claims are also dismissed as the Supreme Court has clearly established that "there is no <u>Bivens</u> action for First Amendment retaliation." <u>Egbert</u>, 596 U.S. at 499.

Plaintiff's Fourth and Fifth Amendment <u>Bivens</u> claims must also be dismissed because each presents a new context that would impermissibly expand the previously recognized <u>Bivens</u> remedies.  While <u>Bivens</u> itself did recognize an implied cause of action for Fourth Amendment violations, it did so in the specific context of a <u>warrantless</u> search.  See <u>Bivens</u>, 403 U.S. at 389.  Here, Plaintiff alleges violations of his Fourth Amendment rights in connection with a search executed <u>pursuant to a warrant</u> signed and issued by a United States Magistrate Judge, permitting the search of the apartments Plaintiff occupied and of the Plaintiff himself. (<u>See</u> Complaint ¶ 27.)  Although the Complaint asserts that the warrant was obtained in bad faith, the Complaint contains factual allegations pertaining to the search warrant that are sufficient to show that Plaintiff's Fourth Amendment claim is not factually indistinguishable from <u>Bivens</u> and thus presents a new context.

Plaintiff's Fifth Amendment claim also presents a new context, as <u>Passman</u> involved a Fifth Amendment claim of sex discrimination.  <u>Passman</u>, 442 U.S. at 231.  Here, Plaintiff argues that he has suffered a violation of his Fifth Amendment right "not to be deprived of life, liberty, or property with [sic] due process of law, and to be free from physical abuse, detention, terrorizing, intimidation, and fright from assault."  (Complaint ¶ 63.)  Indeed, viewing Plaintiff's allegations in the light most favorable to him, his Fifth Amendment claims seem to be premised on the interrogation and the delay of his medical treatment for "some four hours" while agents executed the search warrants.  (<u>Id.</u> ¶¶ 36-39.)  This claim is clearly factually distinguishable from the Fifth Amendment claim in <u>Passman</u> and thus presents a new context.

Because both Plaintiff's Fourth and Fifth Amendment claims present new contexts, step two of <u>Abbasi</u> requires the Court to consider whether "special factors" exist that counsel hesitation toward expanding the scope of available <u>Bivens</u> remedies.  The existence of

alternative remedial structures qualifies as a "special factor."  See Cohen, 640 F. Supp. 3d at 338. The Federal Defendants argue that the existence of remedies such as the Federal Tort Claims Act, 28 U.S.C.A. §§ 2671-80 (Westlaw through P.L. 119-4) ("FTCA"); 31 U.S.C. section 3724 (providing a claim for money damages "caused by an investigative or law enforcement officer"); and internal procedures within the FBI should bar the expansion of a Bivens remedy to address Plaintiff's claims. (See docket entry no. 31 at 11-13.)

Courts in this district have previously held that the FTCA, as well as 31 U.S.C. section 3724, are sufficient to preclude a Bivens claim, and that the "existence of these post-deprivation remedies would [] counsel the Court against recognition of a new Bivens action." Turner v. Dellapia, 498 F. Supp. 3d 500, 512 (S.D.N.Y. 2020); see also Bravo v. U.S. Marshals Serv., 684 F. Supp. 3d 112, 126 (S.D.N.Y. 2023) ("[N]umerous courts in this district have found the FTCA to be an alternative remedy to Bivens").  The Court finds, in light of the entirely new Bivens contexts presented as well as the existence of alternative remedial structures, that no Bivens cause of action is available for the Fourth or Fifth Amendment violations that Plaintiff alleges.  Plaintiff's Bivens claims must therefore be dismissed in their entirety.

B.    The City of New York

Plaintiff asserts various claims against the City for violations of his First, Fourth, Fifth, and Fourteenth Amendment rights, as well as for failure to train, under Section 1983.  (See Complaint ¶¶ 85-86.)

1.   Liability for Defendant Quealy's Actions

The City first argues that it should not be held liable for any of Defendant Quealy's actions despite his employment as a NYPD detective because, at the time of the incidents at issue, Quealy was working in the scope of his federal employment.  (Docket entry

no. 38 ("City Mem.") at 8.)  As discussed above, the Court finds that Quealy was a federally deputized TFO for the JTTF, and was acting in that capacity, at the time of the alleged constitutional violations.

Under 5 U.S.C. section 3374(c), state and local law enforcement officers designated as TFOs are treated as federal employees for the purposes of federal tort liability. Aikman v. Cnty. of Westchester, 691 F. Supp. 2d 496, 498 (S.D.N.Y. 2010).  "[C]ourts within this Circuit have interpreted § 3374(c) to extend to civil rights actions."  Id.  It is well-established that Section 1983 claims against city employers have been dismissed when their employees were working as federal TFOs.  See Bordeaux v. Lynch, 958 F. Supp. 77, 83-84 (N.D.N.Y. 1997) (dismissing claims against the City where, "because [defendant] was working with the DEA and assigned to the [DEA Task Force], he is considered to be acting as a federal agent").

The complaint, even read in the light most favorable to the Plaintiff, alleges that Defendant Quealy was working within the scope of his federal employment by carrying out the tasks of the JTTF and therefore was not working under color of state law as a NYPD employee. The City thus is not liable for Quealy's actions in this matter under Section 1983, and all claims asserted against the City premised on Quealy's actions must be dismissed.

2.    Municipality Liability

Plaintiff's municipality liability claims must also be dismissed.  To establish municipality liability under Section 1983, a plaintiff must show that an action "pursuant to official municipal policy of some nature caused a constitutional tort." Green v. City of Mount Vernon, 96 F. Supp. 3d 263, 300 (S.D.N.Y. 2015) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)).  A plaintiff may allege the existence of a municipal policy or custom in several ways.  First, a plaintiff can identify a formal policy "officially promulgated or adopted by

a municipality." Monell, 436 U.S. at 690. A plaintiff can also show that "an official or officials responsible for establishing final policy with respect to the subject matter in question took action or made a specific decision which caused the alleged violation of plaintiff's constitutional rights," Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986), or that there is a practice by subordinate officials "so permanent and well-settled as to constitute a 'custom or usage,'" Sorlucco v. N.Y.C. Police Dept., 971 F.2d 864, 870-71 (2d Cir. 1992) (citation omitted). Finally, a plaintiff can show a "'failure to train [that] amounts to deliberate indifference to the rights' of those with whom municipal employees will come in contact." Walker v. City of N.Y., 974 F.2d. 293, 297 (2d Cir. 1992) (citation omitted).

To establish a viable failure to train claim, a plaintiff must show that: 1) the municipality "knows 'to a moral certainty' that its employees will confront a given situation," 2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation," and 3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." Id. at 297-98. Further, a plaintiff must show that "the need for more or better supervision to protect against constitutional violations was obvious," such as by showing "repeated complaints of civil rights violations." Green, 96 F. Supp. 3d at 307.

To survive a motion to dismiss, Plaintiff must "allege facts tending to support, at least circumstantially, an inference that [] a municipal policy or customs exist," and cannot simply assert the existence of such a policy or custom. Id. at 302 (citation omitted.) "A single instance of unconstitutional conduct is not sufficient to make out a claim of an unconstitutional custom." Id. at 307 (citation omitted).

Plaintiff fails to allege facts supporting an inference that a municipal policy or custom that resulted in injury to the Plaintiff exists.  The Complaint includes only conclusory terms and allegations as to any such custom.  (See, e.g., Complaint ¶ 85 ("Defendants developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate and willful indifference").)  The Complaint also alleges no facts to establish that there have been other complaints or allegations of constitutional violations caused by any such policy or custom, or that there was a failure to train in a manner that was obviously necessary to protect against such violations.  Therefore, Plaintiff has failed to plead sufficient facts to support a plausible inference that the City promulgated or maintained a municipal policy that caused his alleged injuries. Plaintiff's Section 1983 claims against the City are dismissed entirely.

C.    John and Jane Does

Plaintiff also asserts First, Fourth, Fifth, and Fourteenth Amendment claims against various unknown John and Jane Does.  The unnamed Defendants in this matter are "either NYPD officers or FBI agents assigned to or supervised by the JTTF."  (Complaint ¶ 10.) The Complaint contains no facts to support that the John and Jane Does were acting under color of state law, instead referring to the unnamed parties as "agents of the JTTF" and "JTTF agents." (See generally Complaint.)  Without factual allegations that the JTTF agents were acting under color of state law, Plaintiff has failed to plead a plausible Section 1983 claim against any of the John or Jane Does.  Therefore, Plaintiff's claims against the John and Jane Does are dismissed without prejudice.

D.    Leave to Amend

The Court declines to grant the Plaintiff leave to amend his claims against the Federal Defendants.  "'Leave to amend, though liberally granted, may properly be denied' for

'repeated failure to cure deficiencies by amendments previously allowed' or 'futility of amendment,' among other reasons." Bischoff v. Albertsons Co., No. 22-CV-4961-CS, 2023 WL 4187494, at *7 (S.D.N.Y. June 26, 2023) (quoting Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008)).  Because the deficiencies in Plaintiff's claims arise from Plaintiff's core legal theory, the Court declines to grant Plaintiff an opportunity to amend those claims because such opportunity would be futile.

The Court does, however, grant Plaintiff leave to file a motion to amend his Section 1983 claims against the City, as well as the John and Jane Does.  Any such motion to amend those claims must comply with all applicable federal and local rules, including Local Civil Rule 15.1(a).  Should Plaintiff fail to file a motion for leave to amend **within 30 days of the entry of this Memorandum Order**, Plaintiff's Section 1983 claims against the City will be dismissed with prejudice and without further advance notice.

III.    CONCLUSION

For the foregoing reasons, the Defendants' motions are granted, and Plaintiff's Complaint is dismissed in its entirety.  Plaintiff's Bivens claims are dismissed with prejudice. Plaintiff is granted leave to file a motion to amend **within thirty days of the issuance of this Memorandum Order** to amend the Section 1983 claims against the City and the John and Jane Does.  If Plaintiff fails to file a motion to amend within the allotted time, the Court will enter judgment and close this case without further advance notice.  This Memorandum Order resolves docket entries no. 30 and 38.


SO ORDERED.

Dated: New York, New York

March 31, 2026


/s/ Laura Taylor Swain

LAURA TAYLOR SWAIN

Chief United States District Judge